ATKINSON, J.—1. Where upon the trial of a criminal case it appears from a question asked a witness that his answer must disclose his knowledge of the contents of a bill of indictment which is a part of a record of another case, the answer is properly excluded, the indictment itself being the best evidence.

2. There being no evidence upon which to base it, the charge requested was properly refused. There was sufficient evidence to warrant the verdict, and no good cause for a new trial appears.

and windows of the school-house, and Saxon said he was going to the well to hide his whisky. He went off and was gone three quarters of an hour, during which time a number of persons came to the school-house, including Mrs. Dillard, the wife of deceased, and their children other than Newt and Willie. According to their testimony, they left deceased sitting on the front porch of his residence. They invited him to accompany them, and he declined, saying he would not go as there was no whisky there, or, that he was going elsewhere to get some whisky. Willie Dillard testified, that as he passed his father's place going to Sunday-school, he saw his father going from his cotton-field toward the dwelling-house (being then about 200 yards therefrom), and spoke to him, and he responded. When Saxon returned to the school-house (from a direction opposite to that in which the Dillard place was), he was flushed and perspiring. He sat down among a group outside of the house, and a bystander remarked that he looked badly; to which he replied, "Yes, I have been hard at work." The school exercises were beginning or about to begin. Saxon proposed to go to the well for water, and he and Newt Dillard went together to the well, where they remained ten or fifteen minutes. Then they entered the school-room and took seats. Newt remained through the exercises. Saxon stayed only five or ten minutes, arose and went out with Bill Colquitt, and these two sat outside until school was dismissed. They drank whisky from a bottle Saxon had. After school Saxon went home with or near the Dillard family. Mrs. Dillard and her children entered their house and discovered, in one of the front rooms, a spot of blood on the floor and a lamp containing red oil overturned. Blood in small spots was found also in the hall, leading toward the rear of the house. On the floor of the room mentioned, as well as that of the hall, water had been

poured and wiped up, leaving, after it was dry, a dark colored stain. Mrs. Dillard, according to her testimony, was sent for by her daughter, Saxon's wife, to come to her house as she was sick with headache, etc.; and as Mrs. Dillard was on her way there, she met Saxon, and said to him, "I don't like the appearance of things at my house. Have you seen Newt?" referring to deceased. He said, "Yes, I have seen him." She asked, "Where is he?" He said, "I have killed him, and I have put him in the dairy." He drew the dairy keys from his pocket, handed them to her, and said, "Take these keys; don't you let anybody have these keys; and if you tell it, the same to you." She took them and put them upon a shelf in her stove room where she usually kept them. She did not then go to the dairy, gave no outcry or alarm, and said nothing of what she had been informed to her children, who, according to their testimony, were looking for their father. Saxon further said to her, among other things, that he would carry deceased out and put him where he could be found next morning. Mrs. Dillard's testimony was in some respects contradictory. She admitted that she had withheld what she knew in her testimony at the coroner's inquest, and even that she had sworn falsely; which she explained was through fear of Saxon. She and her son Newt were charged with the murder and were arrested, but were released on bail. Saxon and his family spent the Sunday night at the Dillard residence, his wife and children being in the room with Mrs. Dillard, and he being in the room with one or more of the younger Dillard boys. One of these testified that he did not sleep during the night, and that Saxon arose and went out, and while so gone witness heard the noise commonly made by the steps of the dairy when trod upon. The next morning deceased was found by a servant or cropper lying on the ground near a cotton-house about 100 yards

from the dwelling. His head was split, probably by some heavy instrument, making a very deep wound. His axe was found at the wood-pile, with blood on it and with signs that it had been scraped or rubbed. He had on the same clothes he wore when seen on the previous afternoon by his son Willie, except that he had, on no shoes nor hat. The shoes had been found in his bed-room. He was lying on his right side, but most of the blood appeared on the left of his person. Blood was found in the dairy. He and his wife had been married about 31 or 32 years. The land he had conveyed to her was about 196 acres, and he still owned about 294 acres. He occasionally drank to intoxication, and on some of these occasions was violent to his family, on others not so. When sober he was good to his family. Saxon had considerable influence or control over him when intoxicated, and had been sent for by Mrs. Dillard several times to quiet him. About three weeks before the crime, Saxon said to one McCannon, that if Dillard did not stop his drinking and cutting up, he was going to shorten his days, or something of the kind; he said there had to be a stop put to it. A week before the murder, he said to Mrs. Cooper, that Dillard would not live long; that some bad accident would happen to him unless he changed his habits.

The motion for new trial alleges, that the verdict is contrary to law and unsupported by evidence; and that the court erred: (1) In sustaining an objection to this question asked by defendant's counsel of Mrs. Dillard: "Are you not indicted for this same murder?" (2) In refusing to charge the jury: "If you believe that this defendant did not commit the act but that he did aid in concealing the death, or that he did conceal the name of the real perpetrator of the crime after the act had been committed, then he would be guilty of being accessory after the fact, and you could not find him guilty under this presentment."

G. C. THOMAS and P. W. DAVIS, for plaintiff in error.

J. M. TERRELL, attorney-general, and W. M. HOWARD, solicitor-general, by HARRISON & PEEPLES, *contra*.

---

## HAYNES *et al.* *v.* SCHAEFER.

SIMMONS, C. J.—This is controlled by the decision in the case of *Towns* v. *Mathews*, 91 *Ga.* 546.　　*Judgment affirmed.*

March 18, 1895. Brought forward from the last term.

Levy and claim. Before Judge McWHORTER. Hart superior court. March term, 1894.

An execution from a judgment of September 20, 1886, was levied upon 140 acres of land in Hart county, as the property of J. M. Haynes, deceased. A claim was interposed by Elizabeth A. and Sarah G. Haynes, daughters of the deceased. The court directed a verdict for plaintiff, and overruled a motion for a new trial. The evidence showed, that J. M. Haynes died in February, 1891, in possession of the land, having been in possession of it for forty years. It was duly set apart as a homestead on January 23, 1869, under the constitution of 1868, and the act of October 3, 1868. The application for the homestead was filed by J. M. Haynes "as the head of a family." Haynes, his wife, the two claimants and other children were living on the land when so set apart, and constituted the family of Haynes. Mrs. Haynes died fifteen years ago. All the boys have become of age, and all the girls married except the claimants, who remained members of the family, living with Haynes and dependent on him for a support until his death. One of them was about twenty-four years old and the other twenty when the homestead was set apart. They have remained unmarried and have continued to reside on the land since the death of Haynes, and have been and are dependent on the land for a support. They

have no property and no means of support except the land, being physically unable to work.

P. P. PROFFITT, W. L. HODGES and A. G. McCURRY, for plaintiffs in error.　J. H. SKELTON, *contra*.